# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BHUPINDER SINGH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Case No. CIV-26-289-R |
| | ) |
| SCARLETT GRANT, | ) |
| et al., | ) |
| | ) |
| Respondents. | ) |

## REPORT AND RECOMMENDATION

Petitioner Bhupinder Singh, a noncitizen proceeding pro se,[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] United States District Judge David L. Russell referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. Respondents

---

[1]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). This Court construes pro se pleadings liberally, but may not act as a pro se party's advocate, advancing arguments or facts on their behalf. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.").

[2]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

filed a response,[3] and the time to reply has passed. Doc. 7. So the matter is at issue. For the reasons below, the undersigned recommends the Court grant the petition and order Petitioner's immediate release.

## I.    Factual background and procedural history.

Petitioner, an Indian citizen, entered the United States on August 14, 2016, without admission or parole after inspection. Doc. 7, at 1. The Department of Homeland Security (DHS) issued him a Notice to Appear on August 30, 2017, placing him into removal proceedings and charging him as removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). *Id.* Ex. 2. On Petitioner's request for change in his custody status under 8 C.F.R. § 236.1(c), an Immigration Judge (IJ) ordered Petitioner's release from custody on a $25,000 bond on September 20, 2017. *Id.* Ex. 3. Petitioner states he complied with GPS monitoring and all conditions of his release. Doc. 1, at 6. Petitioner applied for asylum on February 22, 2018. Doc. 7, Exs. 1, 4. The IJ issued a final order of removal on January 24, 2024, which Petitioner appealed. *Id.* Ex. 1. The Board of Immigration Appeals (BIA) dismissed Petitioner's

---

[3]    Respondents' response is not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Center because she is not a federal official. *See* Doc. 7 n.1.

appeal on March 20, 2026. *See Bhupinder Singh*, A-209-945-392, https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 20, 2026).

Petitioner asserts he was taken into immigration custody on December 12, 2025, without notice or a hearing. Doc. 1, at 4. Since his arrest, Petitioner has remained in custody without a bond hearing.

## II.    Petitioner's claims.

Petitioner raises three grounds for relief:

Ground One: arbitrary and unlawful detention;

Ground Two: unlawful detention in violation of his Fifth Amendment right to due process;

Ground Three: violation of INA regulations and Immigration and Customs Enforcement (ICE) policies and procedures for failure to give any notice of his bond revocation and follow the procedures for bond revocations.

*Id.* at 6. Liberally construing his petition, he argues that the revocation of his bond without notice and his continued detention without an individualized bond hearing violates the INA and his due process rights by depriving him of his constitutional liberty that accrued during the eight years he has been living in the United States. *See id.*

Petitioner asks this Court to (1) order his immediate release; or (2) order his release on an order of supervision; or (3) order his release on his previous bond conditions; or (4) order Respondents to provide him a bond hearing where

3

the Government hears the burden of proof; and (5) order the Government to show cause why he should not be released.[4] *Id.* at 7.

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.    Respondents violated their own regulations and Petitioner's due process rights when they revoked Petitioner's bond without notice.

Respondents argue that Petitioner does not specify what type of due process violation he raises. While Respondents are correct his substantive due process claim is not ripe, the undersigned finds that Petitioner adequately

---

[4]    Petitioner's latter request was rendered moot in the Court's order for response. *See* Doc. 5.

asserts that Respondents violated their own regulations and in turn his due process rights when they revoked his bond without notice. Doc. 1, at 6, 7.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99.

5

### A.    Statutory and regulatory framework.

Petitioner entered the United States in 2017 and was released on bond on September 20, 2017. Doc. 7, Exs. 2, 3. 8 U.S.C. § 1226(b) provides that DHS "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b); *see also* 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) ("When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director [and certain other federal officers] in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.").

### B.    There is no evidence in the record that Respondents complied with the applicable regulations before revoking Petitioner's bond.

Petitioner argues Respondents violated "INA Regulation and ICE policies and procedures" when they failed to give him notice of his bond revocation. Doc. 1, at 6. Respondents argues this claim is too vague, that they followed 8 C.F.R. § 236.1(c)(9), and that a regulatory violation does not amount to a constitutional violation. Doc. 7, at 7-8.

While Respondents cite § 236.1(c)(9) to support the revocation of Petitioner's bond, they provide nothing more. The Secretary of Homeland

Security and the immigration officials listed in § 236.1(c)(9) have broad discretion to revoke such bond or parole "at any time . . . ." But with that discretion comes responsibility. After an authorized official exercises discretion to revoke the bond granted under 8 U.S.C. § 1226(a), the noncitizen is to be rearrested under the original warrant. *See id*. § 1226(b) ("The [Secretary of Homeland Security] at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."). No evidence in the record indicates that any *authorized* official chose to exercise their discretion to revoke Petitioner's release on bond. That alone is sufficient to find that proper procedures were not followed in effectuating Petitioner's detention. There is no evidence that Petitioner was arrested pursuant to his original warrant of arrest. Consequently, Respondents' re-detention of Petitioner violates both his statutory rights under the INA and his procedural due process rights.

The proper remedy here is immediate release as a bond hearing would not adequately address Respondents' improper re-detention of Petitioner. *See, e.g., E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

7

Furthermore, "notwithstanding the breadth of [§ 1226(b)'s] statutory language, the [BIA] has recognized an important implicit limitation on DHS's authority. The BIA has held that 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017) (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Sing v. Hale*, 2026 WL 765623, at *3 (D. Vt. Mar. 18, 2026) (finding that no change should be made to a previous bond decision "absent a change in circumstances"); *Hernandez-Parrilla v. De Anda-Ybarra*, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025) (same).

Based on this record, the Court concludes Respondents violated their own regulations when they revoked Petitioner's bond without notice of a change in circumstances.

## C. Respondents violated Petitioner's due process rights when they summarily revoked his bond.

This Court analyzes Petitioner's due process claim to determine whether he has a protected liberty interest under the Due Process Clause, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460

8

(1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also* *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process]

Clause protects"). Respondents deprived Petitioner of his protected status when they revoked his bond and placed him in custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending years on bond. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not challenge Petitioner's assertions that he was released on bond in September 2017 and that he abided by the terms of his release. During his eight years of release, his interest in release grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has received no notice of the reason for his bond revocation and simple procedures exist that would mitigate those risks.

10

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at \*6 (E.D. Cal. Feb. 9, 2026). Nothing in the record shows that Petitioner received any procedural safeguards to determine whether the revocation of his bond and his detention were justified, and thus Respondents have detained him without any stated cause. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *see also Gualpa-Lumbi v. Hoover,* 2026 WL 452351, at \*11 (N.D. Ohio Feb. 18, 2026) ("[Petitioner] was previously released and permitted to go about living for years in the United States during the pendency of his immigration proceedings before being detained in 2025 . . . [which] show[s] that [Petitioner] is at risk of being erroneously deprived of his freedom.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining [P]etitioner without adequate notice

11

and an opportunity to challenge the revocation of his release is low." *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the government's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was deemed not necessary for eight years.

The undersigned concludes Respondents breached their own regulations and violated Petitioner's due process rights when they summarily revoked his bond.[5] Based on these findings, the undersigned recommends the Court grant

---

[5]    Petitioner's initial detention was governed by 8 U.S.C. § 1226(a). The authority for Petitioner's detention shifted to 8 U.S.C. § 1231(a)(2) on March 20, 2026, when the BIA dismissed his appeal. The shift in detention authority occurred shortly after Petitioner filed this habeas action in February 2026. The undersigned finds that the detention clock does not restart to zero by virtue of a change in the statute that arguably authorizes a noncitizen's ongoing detention. Despite the shifting statutory authority, Petitioner did not receive the process he was due, giving rise to an as-applied constitutional challenge to that detention. Respondents make no argument that Petitioner's detention

the habeas corpus petition and release Petitioner from detention subject to the same conditions that governed his earlier parole.[6]

## V.   Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition and order his immediate release from detention under his previous bond conditions. Specifically, the undersigned recommends the Court:

- order Respondents to immediately release Petitioner from their custody under his previous bond conditions;

- enjoin Respondents from re-detaining Petitioner without notice and compliance with §§ 241.4 and 241.13 and a pre-deprivation hearing before a neutral decisionmaker;

- order Respondents to submit a declaration pursuant to 28 U.S.C. § 1746 affirming they have released Petitioner from custody.

---

authority shifted to § 1231(a)(2) or that Petitioner's redetention complied with 8 C.F.R. §§ 241.4 or 241.13.

[6]   Because the undersigned recommends the Court grant habeas relief and order Petitioner's immediate release, Petitioner will no longer be subject to prolonged detention, rendering his remaining claims moot.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by April 27, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[7] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 22nd day of April, 2026.

_____

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[7]     Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").